**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GAVIN COCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. _____ |
| PTLM. LOVINS, individually | ) | |
| | ) | |
| JOSH DEAR, individually | ) | |
| | ) | Non-Arbitration |
| HELEN ZANE, individually | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | Demand for Jury Trial |
| | ) | |

## COMPLAINT

COMES NOW, Gavin Coco, by and through his attorney, The Norman Law Firm, LLC,

Stephen P. Norman, Esquire, who brings this Complaint against Helen Zane, Patrolman Lovins,

and Josh Dear.

## FACTS

### Parties

1.  Plaintiff, Gavin Coco ("Plaintiff"), is a Maryland resident who may be contacted for the

    purposes of this litigation through his counsel, Stephen P. Norman of The Norman Law Firm,

    30838 Vines Creek Road, Unit 3, Dagsboro, DE 19939.

2.  Defendant, Helen Zane ("Zane"), acted under color of law as an agent or employee of the

    Town of Dewey Beach Police Department ("DBPD") as an employee of the Delaware State

    Police who was assigned to the DBPD, at all relevant times hereto.

3.  Defendant, JOSH DEAR ("Dear"), acted under color of law as an agent or employee of the

    DBPD as an employee of the Delaware State Police who was assigned to the DBPD, at all

1

relevant times hereto.

4. Defendant, Patrolman Lovins ("Lovins"), acted under color of law as an agent or employee of the DBPD located at 105 Rodney Avenue, Dewey Beach, Delaware, at all relevant times hereto.

## Jurisdiction and Venue

5. This is a civil action for damages arising under the Fourth and Fourteenth Amendments to the United States Constitution, The Civil Rights Act of 1964 – 42 U.S.C. § 1983 and § 1988.

6. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1331, 1343(a)(3) and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

7. Personal jurisdiction is proper since all parties either reside in the District, conduct business in the District, or the unlawful actions giving rise to the claim took place within this District.

8. Venue is properly in this Court pursuant 28 U.S.C. §1391(b) because the events giving rise to the suit occurred in this judicial District.

## Common Allegations of Fact

9. Plaintiff is a thirty-four (34) year-old male.

10. During the early morning hours of May 27, 2018, Plaintiff was with his friend Jason Epps ("Epps") on the way to meet their ride to take them from Dewey Beach, Delaware to Rehoboth Beach, Delaware where they were staying.

11. Plaintiff and his friends were walking on a sidewalk adjacent to Route 1 in Dewey Beach, Delaware.

12. A disturbance involving Dewey Beach police officers was occurring in a parking lot approximately 40-50 feet away from where Plaintiff stood.

13. The disturbance involved an African American woman who was yelling that her car window

had been broken and that none of the nearby Dewey Police officers were doing anything about it.

14. The officers then threw the woman against a car and began the process of arresting her.

15. The woman yelled out "I didn't even do anything!".

16. At approximately 1:38am, Epps began filming the disturbance because he felt unnecessary force was being used on the woman and that she was possibly being unjustly arrested.

17. Plaintiff and Epps were next to each other on the sidewalk a safe distance from the disturbance.

18. Plaintiff was not involved in the disturbance in any way.

19. Plaintiff was not interfering with any police officer conducting his duties.

20. Defendant Zane noticed that Epps was videotaping the incident.

21. Zane yelled "they're filming, get them out of here."

22. Dear, who was mounted on his horse, approached Plaintiff from behind and struck him with his horse "JR".

23. The force from the horse knocked Plaintiff backwards several feet.

24. Plaintiff was caught off guard and did not see Dear approach him.

25. After the initial strike Plaintiff turned and faced the horse.

26. Dear then rams Plaintiff again with his horse.

27. In the process of ramming Plaintiff into the street, "JR" the horse Dear was riding stepped on Plaintiff's foot.

28. The horse stepping on Plaintiff's foot ripped the nail off Plaintiff's big toe causing a large gash on top of his toe.

29. Plaintiff falls towards the white police vehicle parked on route 1.

3

30. After the horse stepped on Plaintiff's foot, Zane joined Dear upon her horse "Poseidon" and proceeded to together push Plaintiff into the white police vehicle.

31. As Zane and Dear used their horses to force Plaintiff into the care Zane yelled out "He touched my horse.  He touched my horse!".

32. If there was contact with the horse it was unintentional and caused by Dear pushing Plaintiff with his horse JR.

33. Zane then forcefully grabbed Plaintiff's shirt from the back as other officers on foot approached to handcuff him.

34. Zane calls Plaintiff an "asshole".

35. Plaintiff was then quickly placed into the back of a police vehicle parked nearby.

36. Defendant Zane can be heard saying "I don't care! He grabbed my horse", referring to Plaintiff after he was arrested.

37. At no time did Plaintiff resist arrest or struggle with any of the arresting officers.

38. On June 1, 2018, Zane drafted an incident report about the incident involving Plaintiff.

39. In the report she indicated that she was assigned to Dewey Beach Police Department ("DBPD") with supplemental patrol for Memorial Day weekend.

40. In her report she included materially false information.

41. Zane indicated that she saw Plaintiff move around the front of Corporal Dear ("Dear") and his mount and proceed towards her.

42. This statement was materially false.

43. Zane wrote that Plaintiff ignored her commands to exit the area instead moving towards her to punch her horse in the left side of his neck.

44. Plaintiff did not move towards Zane.

4

45. Plaintiff did not punch her horse.

46. This statement was materially false.

47. In fact, Zane's assertion that Plaintiff punched her horse was in direct contradiction to her words recorded on video.

48. Plaintiff was arrested by Defendant Lovins.

49. Lovins took Plaintiff to the Rehoboth Beach Police Department for processing and arraignment since Dewey's processing area was inoperable at the time.

50. Lovins charged Plaintiff with Offensive Touching of a law enforcement officer.

51. Lovins witnessed the incident and wrote his own report justifying the arrest.

52. Lovins drafted his police report the day of the incident.

53. In his sworn report Lovins wrote that he observed Plaintiff make a quick and aggressive move and struck the horse's shoulder with his shoulder.

54. This statement was materially false.

55. Plaintiff never struck the horse with his shoulder.

56. Lovins included in his report that Plaintiff's big toe was stepped on by the horse.

57. Lovins recognized that Plaintiff was in need of medical treatment and requested Emergency Medical Services.

58. Lovins charged Plaintiff with offensive touching under by 11 Del. C. Section 601 which requires the touching of a person.

59. Plaintiff was never accused of touching a person, only a horse.

60. The charge against Plaintiff was factually unsupported.

61. The false claim that Plaintiff punched a horse was published to the press in multiple press outlets locally, regionally, and even nationally.

5

62. Nbcphiladelphia.com channel 10 showed a story which included surveillance video with the heading "Delaware Beach Brawl leaves 2 Officers Struck by Car, Police Horse Punched in Face."

63. USsnews.com published an article entitled "Officers Struck, Police Horse Punched During Delaware Brawl."

64. At the time this complaint is filed both these articles are shown when Plaintiff's name is searched.

65. Both the Philadelphia news channel and usnews.com attributed the source of their information regarding the punching of the horse to the Dewey Beach police.

66. Upon information and belief, the Dewey Beach police were already in possession of the surveillance video showing that no horse was punched.

67. As a result of the false materially information written in the report of Zane and published to the press, Plaintiff was fired from his job.

68. Plaintiff also received harassing and threatening posts forcing him to shut down his social media in fear for his safety.

69. Plaintiff still suffers from injuries, including but not limited to physical, emotional, and psychological injuries.

### COUNT I:  VIOLATION OF 42 U.S.C. §1983 BASED ON 4TH AMENDMENT UNLAWFUL DETENTION AS TO ZANE AND LOVINS

70. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

71. Plaintiff was unlawfully seized when Zane grabbed Plaintiff by his shirt.

72. Plaintiff was unlawfully seized and arrested when Lovins placed him under arrest and handcuffed him.

6

73. Both Zane and Lovins witnessed the interaction between Plaintiff and Zane and were aware Plaintiff committed no crime.

74. Zane and Lovins lacked probable cause to seize and arrest Plaintiff.

75. There were no exigent or other circumstances justifying the seizure and arrest of Plaintiff.

76. The scope of the violent intrusion of Plaintiff's rights was unreasonably related to the circumstances.

77. Plaintiff was not creating a disturbance and no persons were at risk due to Plaintiff's actions.

78. As a result of Zane and Lovins actions, Plaintiff suffered serious physical, psychological, and other injuries.

**COUNT II:  VIOLATION OF 42 U.S.C. §1983 4th AMENDMENT USE OF EXCESSIVE FORCE AS TO DEAR AND ZANE**

79. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

80. Dear used excessive force when he rammed his horse into Plaintiff.

81. Dear used excessive force when he caused his horse to step on Plaintiff's foot.

82. Dear continued to use excessive force when he continued to ram Plaintiff with his horse.

83. Zane used excessive force when she joined Dear in using her horse to push Plaintiff into a parked vehicle.

84. Zane continued to use excessive force when she forcefully grabbed Plaintiff who had committed no crime.

85. Any and all force was excessive as there was no probable cause to seize and arrest Plaintiff.

86. Plaintiff was not disorderly, did not pose a threat of danger to anyone, and did not resist arrest or struggle.

87. The use of force was not justified.

88. As a result of Zane's excessive force, Plaintiff suffered serious physical, psychological, and other injuries.

### COUNT III:  STATE MALICIOUS PROSECUTION-ZANE AND LOVINS

89. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

90. Lovins initiated criminal proceedings against Plaintiff when he charged Plaintiff with offensive touching of a police officer under 11 *Del. C.* §601 supported by false material facts that Plaintiff aggressively struck the horse.

91. Zane instituted or continued the criminal proceedings against Plaintiff by her false material facts that he punched her horse.

92. Upon information and belief, these criminal proceedings were instituted or furthered by both Zane and Lovins by inclusion of their material false statements.

93. The charges were dismissed against Plaintiff without any concession of wrongdoing by Plaintiff.

94. Zane and Lovins maliciously and improperly initiated these criminal proceedings against Plaintiff because they both knew or should have known the charges lacked merit because there was an absence of probable cause to institute the criminal proceedings.

95. As a result, Plaintiff suffered serious physical, psychological, and other injuries.

### COUNT IV:  FABRICATION OF EVIDENCE 4th AMENDMENT-ZANE AND LOVINS

96. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

97. Zane's inclusion in her police report that Plaintiff punched her horse was material and inflammatory evidence that was critical to the establishment of probable cause.

98. Lovins inclusion in his police report that Plaintiff aggressively moved towards the horse where he struck the horse with his shoulder was material evidence that was critical to the establishment of probable cause.

99. Zane falsely stated under oath that Plaintiff punched her horse.

100. Lovins falsely stated under oath that Plaintiff aggressively struck the horse with his shoulder.

101. Zane fabricated the evidence against Plaintiff in bad faith in order to support the arrest of Plaintiff and to cover up her wrongful actions in using unnecessary force against Plaintiff.

102. Lovins fabricated the evidence against Plaintiff in bad faith to support Zane's efforts to cover up her unlawful actions.

103. Both Zane's and Lovins fabrication of facts in their report caused Plaintiff hardship when he was arrested for a crime he did not commit.

104. Plaintiff was forced to hire an attorney to defend against these fabricated charges.

105. As a result, Plaintiff suffered extreme humiliation, lost wages, loss of reputation, and emotional distress.

## COUNT V:  BATTERY-DEAR AND ZANE

106. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

107. Dear committed intentional and unpermitted contact upoon Plaintiff when he rammed him with his horse which stepped on his foot.

108. Zane committed intentional and unpermitted contact upon Plaintiff when she pushed Plaintiff into a parked car with her horse and then grabbed him forcefully by his collar.

109. The contact was harmful and/or offensive to Plaintiff.

110. Plaintiff did not consent to the contact.

9

111. As a result, Plaintiff suffered severe emotional distress, humiliation, embarrassment, psychological injuries, and related physical symptoms.

## **PRAYER FOR RELIEF**

WHEEFORE, Plaintiff prays for judgment against Defendants as follows:

A.    All lawful damages, including compensatory damages in an amount to be determined, against all Defendants.

B.    Nominal damages.

C.    Punitive damages in an amount sufficient to punish Defendants and discourage them and others from engaging in similar conduct in the future.

D.    Plaintiffs' cost in this action, including reasonable attorney fees pursuant to 42 U.S.C. §1983 and pre and post-judgment interest.

E.    Lost past and future wages, back-pay, and front-pay.

F.    Such other relief as this Court deems just and equitable.

G.    Trial by Jury.

Respectfully Submitted,

**THE NORMAN LAW FIRM**

Dated:  November 30, 2018

/s/Stephen P. Norman
Stephen P. Norman, Esquire, Bar I.D. 4620
30838 Vines Creek Rd., Unit 3
Dagsboro, Delaware  19939
302-537-3788
SNorman@TheNormanLawFirm.com
*Attorney for Plaintiff*

10