# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

GAVIN COCO,

                Plaintiff,

v.

JOSH DEAR, individually,
HELEN ZANE, individually,

                Defendants.

C.A. No. 18-1902-GBW

---

Stephen P. Norman, THE NORMAN LAW FIRM, LLC, Dagsboro, Delaware

    *Attorney for Plaintiff*

Kenneth L. Wan, Andrew R. Fletcher, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware

    *Attorneys for Defendants*

## MEMORANDUM OPINION

April 5, 2023
Wilmington, Delaware

_____
GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Defendants Josh Dear's ("Dear") and Helen Zane's ("Zane") (collectively, "Defendants") Motion for Summary Judgment (D.I. 82) and Defendants' Motion to Preclude Plaintiff's Expert Witnesses (D.I. 86).

## I. BACKGROUND

On May 27, 2018, in the early morning hours, Gavin Coco ("Plaintiff" or "Coco") was walking with his friend, Jason Epps ("Epps"), in Dewey Beach, Delaware. D.I. 49 ¶ 9. While Coco and Epps were walking towards their car ride home, they noticed a commotion outside a nearby restaurant. *Id.* ¶¶ 9, 11-12; D.I. 85 ¶ 3. Epps began recording the commotion in the parking lot, while Coco observed. D.I. 49 ¶ 15; D.I. 85 ¶ 11. Officers Dear and Zane[1] responded to the disturbance on horseback. D.I. 49 ¶¶ 19-20; D.I. 85 ¶¶ 2, 4. Dear rode a horse named "J.R." and Zane rode a horse named "Poseidon." D.I. 49 ¶ 19; D.I. 85 ¶ 2. Dear and Zane were dispatched to help disburse the crowds that were forming around the disturbance. D.I. 85 ¶ 4. A police officer on foot approached Coco and Epps and ordered them to leave the area. D.I. 85 ¶ 5; D.I. 84, Ex. G (Coco Dep.) at 18:14-20. Dear noticed that Coco was still not moving from the area and approached Coco on horseback. D.I. 85 ¶ 5. Dear tried to position J.R. between the crowd and the ground officers "to push everyone . . . back in the direction away from the parking lot." D.I. 84, Ex. C (Dear Dep.) at 46:5-11. During this maneuver, J.R. made contact with Coco and stepped on Coco's toe. D.I. 49 ¶¶ 33-34; D.I. 84, Ex. C (Dear Dep.) at 46:17-23; D.I. 84, Ex. G (Coco

_____
[1] According to the Complaint, Officers Zane and Dear "acted under color of law as an agent or employee of the Town of Dewey Beach Police Department ('DBPD') as an employee of the Delaware State Police who was assigned to the DBPD." D.I. 49 ¶¶ 2-3.

1

Dep.) at 20:2-21:5. Zane then approached Coco and helped Dear maneuver Coco away from the disturbance and into a car. D.I. 49 ¶ 35; D.I. 85 ¶ 7. Suddenly, Poseidon's head jerked back, and Zane yelled out "he touched my horse." D.I. 49 ¶¶ 35-37; D.I. 85 ¶ 7. Zane then grabbed Coco's shirt until Officer Jason Lovins ("Lovins") could arrest Coco. D.I. 49 ¶ 38; D.I. 85 ¶ 7. The events that transpired on May 27, 2018 resulted in Coco filing the present action "for damages arising under the Fourth and Fourteenth Amendments to the United States Constitution, The Civil Rights Act of 1964 – 42 U.S.C. § 1983 and § 1988." D.I. 49 ¶ 4.

## II. LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* "The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case." *Peloton Interactive, Inc. v. iFIT Inc.*, C.A. No. 20-1535-RGA, 2022 WL 1523112, at *1 (D. Del. May 13, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

2

information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B. *Daubert*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Third Circuit has explained,

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have . . . [held] that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to

3

>its scientific validity. Finally, Rule 702 requires that the expert testimony . . . must be relevant for the purposes of the case and must assist the trier of fact.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (cleaned up); *Kuhar v. Petzl Co.*, No. 19-3900, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022) (noting the same trilogy).

Rule 702 "'has a liberal policy of admissibility.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (citation omitted); *see also United States v. Scripps*, 599 F. App'x 443, 447 (3d Cir. 2015) (same). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (quoting *Daubert*, 509 U.S. at 596).

## III. DISCUSSION

### A. Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment on the following five claims: (1) unlawful detention against Zane, (2) excessive force against the Defendants, (3) state law malicious prosecution against Zane, (4) battery against Defendants, and (5) First Amendment retaliation against Defendants. D.I. 49 at 6-10; D.I. 83 at 8. Defendants also argue that qualified immunity bars Coco's constitutional claims and Delaware's State Tort Claims Act bars Coco's state law claims. D.I. 83 at 20-21. The Court will take up these issues in turn, while setting out the relevant law, where appropriate.

#### i. Unlawful Detention

Section 1983 of Title 42 of the United States Code provides:

>Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

4

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). "An unlawful detention claim brought pursuant to Section 1983 requires a plaintiff to establish: (1) a Fourth Amendment seizure (2) without probable cause." *Alabi-Shonde v. Patterson*, C.A. No. 11-608-LPS, 2014 WL 495466, at \*4 (D. Del. Feb. 6, 2014) (citations omitted).

The parties dispute whether Zane had probable cause to seize Coco. *See* D.I. 49 ¶ 68; D.I. 83 at 9; D.I. 90 at 9-10. Defendants argue that Zane had probable cause for seizing Coco for striking her horse in violation of 11 Del. C. § 1250 (a), which provides:

> A person is guilty of harassment of a law-enforcement animal when such person intentionally harasses, taunts, menaces, challenges or alarms a law-enforcement animal in such a manner as is likely to provoke from such animal a violent, defensive or threatening response, such as lunging, baring of teeth, kicking, spinning or jumping, if such response from the animal causes alarm, distress, fear or risk of injury to any person or to the animal.

Zane testified that she saw Coco punch Poseidon with his right fist, which resulted in Poseidon's head being "jerked" back. D.I. 83 at 3 (citing D.I. 84, Ex. B (Zane Dep.) at 138:2-139:22). Another police officer—Lovins—who was at the scene and filled out the Initial Crime Report, D.I. 84, Ex. A, also testified that he saw Coco's forearm strike Poseidon, which resulted in Poseidon's head being "jerk[ed] back." D.I. 84, Ex. D (Lovins Dep.) at 22:20-25, 23:15-25:5, 70:4-24, 84:2-7; *see also id.*, Ex. A. Coco argues that Zane did not have probable cause to arrest him for harassment of law enforcement animals, *see* 11 Del. C. § 1250 (a), because Coco has "emphatically denied punching/striking Zane's mount." D.I. 90 at 9.

5

The Court finds no reasonable juror presented with the record evidence could find that Zane lacked probable cause to arrest Coco. "'[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). The probable cause standard deals with probability and "depends on the totality of the circumstances." *Id.* at 371. "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* (citations omitted); *see also Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).

Both Zane and Lovins witnessed Poseidon's head jerk back, suggesting that something provoked Poseidon to have such a reaction.[2] Zane, Dear, Coco, and Epps all agree that Zane uttered the words "[h]e touched my horse." D.I. 84, Ex. B (Zane Dep.) at 167:15-20, Ex. C (Dear Dep.) at 35:17-36:3, Ex. G (Coco Dep.) at 27:14-18, Ex. H (Epps Dep.) at 26:7-16. There is no dispute that Coco was approaching Zane and Poseidon and that he was in close proximity to them. *Id.* at Ex. B (Zane Dep.) at 136:6-137:20, Ex. G (Coco Dep.) at 27:2-12. In light of these events leading up to the arrest, the Court finds that these facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.[3] Accordingly, the Court grants

---

[2] Coco does not deny or affirm whether he saw Poseidon's head jerk back. *See generally* D.I. 90.

[3] Coco argues that there is a genuine issue of material fact regarding whether probable cause existed because he "emphatically denied punching/striking Zane's mount [Poseidon]." D.I. 90 at 9. In 2016, the Third Circuit provided helpful guidance regarding when the existence of conflicting evidence rises to the level of a genuine issue of material fact:

6

Defendants' summary judgment as to Coco's claim for unlawful detention. *See Merkle*, 211 F.3d at 789 ("[A] district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." (internal quotation marks omitted)).

### ii. Excessive Force

The parties dispute whether Zane and Dear used excessive force on Coco. Coco alleges in the Complaint that Zane used excessive force when she used Poseidon to push Coco into a parked vehicle and when she grabbed Coco. D.I. 49 ¶¶ 77-78. Coco also alleges that Dear used excessive force when his horse rammed into Coco and stepped on Coco's toe. *Id.* ¶¶ 74-76.

"To maintain an excessive force claim, 'a plaintiff must show [(1)] that a seizure occurred and [(2)] that it was unreasonable.'" *Williams v. City of York, Pennsylvania*, 967 F.3d 252, 259 (3d Cir. 2020) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (internal quotation marks omitted)). With respect to the first element, "[a] Fourth Amendment seizure involves 'a termination of freedom of movement through means intentionally applied.'" *McCracken v. Freed*, 243 F. App'x 702, 708 (3d Cir. 2007) (quoting *Brower v. County of Inyo*,

---

> While it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party, it does not follow that we exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider. Instead, we view *all* such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred. Only then would the existence of conflicting evidence rise to the level of a "genuine dispute as to any material fact" such that summary judgment would be inappropriate. Thus, where the question is one of probable cause, the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard.

*Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (emphasis in original). Here, Coco's mere denial of striking Zane's horse is not sufficient to defeat Defendants' summary judgment in light of the totality of the circumstances as explained above.

7

489 U.S. 593, 596 (1989)). "A seizure occurs even when an unintended person or thing is the object of the detention or taking." *Brower*, 489 U.S. at 596. The detention, however, must be intentional and "not the accidental effect[ ] of otherwise lawful government" conduct. *Id.* at 597. The second element is analyzed under the "reasonableness inquiry." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). This inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978); *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The Court "ask[s] whether, from the perspective of the officer at the time of the incident and not with the benefit of hindsight," the officers were objectively reasonable in their use of force. *Brown v. Makofka*, 644 F. App'x 139, 142 (3d Cir. 2016) (citing *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015)). To determine whether the forced used was "objectively reasonable," the Court considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

With respect to Zane, the crux of the parties' dispute is whether Zane's use of force was reasonable. D.I. 83 at 13-14; D.I. 90 at 10-13; D.I. 94 at 3-4. Coco alleges that Zane "used excessive force when she joined Dear in using her horse to push [Coco] into a parked vehicle" and "when [Zane] forcefully grabbed [Coco] who had committed no crime." D.I. 49 ¶¶ 77-78; *see also* D.I. 90 at 12-13. Coco argues:

> The evidence presented suggests that as Coco stumbled between the animals, Zane reached out and grabbed Coco, momentarily choking him as she hurled profanity at him for "touching" her horse. *While the absence of probable cause, standing alone, will not render her actions excessive, see Snell v. City of York*, 564 F.3d 659,

8

> 672 (3d Cir. 2009), *Zane's subsequent attempts to escalate her allegations against Coco suggest that she was aware that probable cause was not present.*

D.I. 90 at 12 (emphasis added). Coco's argument improperly conflates its unlawful detention and excessive force claims. *See Snell*, 564 F.3d at 672 ("We have rejected similar efforts to bootstrap excessive force claims and probable cause challenges.") (citations omitted). Thus, to the extent Defendants' motion for summary judgment improperly conflates unlawful detention and excessive force claims, Defendants' motion for summary judgment will be granted as a matter of law.

Next, the Court must determine whether Zane grabbing Coco's shirt and uttering "venomous language" was unreasonable. The Court must consider the totality of the circumstances in determining whether Zane used excessive force. At the summary judgment stage, the Court must view the facts in the light most favorable to the non-moving party and also consider the reasonableness of those facts from "the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. The Court finds, based on the evidence of record, there is no genuine issue of material fact as to whether Zane's use of force was reasonable. The Court elaborates its findings below.

It is undisputed that Coco was told numerous times by both the ground officers and the mounted officers to move away from the parking lot; yet, Coco remained in the prohibited area. *See e.g.*, D.I. 84, Ex. C (Dear Dep.) at 44:3-4611; Ex. B (Zane Dep.) at 126:6-8; Ex. G (Coco Dep.) at 18:14-20. There were also reports that Coco was intoxicated and not compliant at times. *See id.*; *see also id.* at Ex. B (Zane Dep.) at 144:12-15; Ex. D (Lovins Dep.) at 54:10-24, 88:20-25. Officers had described the scene at the parking lot as "chaotic" with lots of people being arrested. *Id.* at Ex. E (Officer Skyler Bowden ("Bowden") Dep.) at 22:16-21. After Zane believed Coco had struck her horse, Zane notified Coco that he was under arrest, but Coco proceeded to walk

9

away. *Id.* at Ex. A at 2. This resulted in Zane grabbing Coco's shirt to restrain him from walking away until a ground officer could arrest him. *Id.* at Ex. B (Zane Dep.) at 81:8-15.

The Court finds Zane's use of force was reasonable. "Police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the suspect's behavior." *Clark v. Condon*, C.A. No. 1-654-SLR, 2002 WL 31102741, at *2 (D. Del. Sept. 20, 2002). Here, the Court finds that Coco has not presented sufficient evidence from which a reasonable juror could conclude that Zane's use of force during Coco's arrest was not objectively reasonable. Coco was walking away from Zane after she had notified Coco that he was under arrest and, given the height difference of Zane mounted on a horse and Coco walking by foot, it was reasonable for Zane to grab Coco's shirt to refrain him from walking away. Additionally, Zane was trying to help fellow officers deal with a crowd of people congregating in the parking lot. *See Mazzella v. Marzen*, C.A. No. 13-1516, 2015 WL 179091, at *6-7 (M.D. Pa. Jan. 14, 2015) (granting summary judgment that an officer's use of force was reasonable when he grabbed a suspect by a shirt when the suspect was noncompliant and the officer was dealing with a crowd). "Having found that no reasonable jury could find that the force used here was excessive, the addition of verbal threats [or venomous language] cannot and does not transform Plaintiff's case into an unconstitutional use of force case." *Hudson v. Goob*, C.A. No. 7-1115, 2009 WL 789924, at *12 (W.D. Pa. Mar. 24, 2009). Thus, the Court concludes that Coco has failed to create a genuine issue of material fact as to whether Zane's actions were unreasonable.

With respect to Dear, Coco alleges he used "excessive force when he rammed his horse into [Coco]," "when he caused his horse to step on [Coco's] foot," and "when he continued to ram [Coco] with his horse." D.I. 49 ¶¶ 74-76. The first question the Court must determine is whether Dear seized Coco. "A seizure requires the use of force with intent to restrain." *Torres v. Madrid*,

10

141 S. Ct. 989, 998 (2021). "However, the detention must be intentional, and 'not the accidental effect[ ] of otherwise lawful government' conduct." *McCracken v. Freed*, 243 F. App'x 702, 708 (3d Cir. 2007) (citation omitted).

The Court finds that Coco has not presented sufficient evidence from which a reasonable juror could conclude that Dear seized Coco. Dear positioned his horse between the ground officers and the crowd to help disburse the crowds from the parking lot. D.I. 84, Ex. C (Dear Dep.) at 46:5-11. It was during this maneuver that Dear's horse made contact with Coco. D.I. 49 ¶ 24; D.I. 84, Ex. C (Dear Dep.) at 46:17-23; Ex. G (Coco Dep.) at 20:2-21:5. The scene at the parking lot was chaotic and Dear was trying to control the crowds. D.I. 84, Ex. E (Bowden Dep.) at 22:16-21. Coco was also ordered numerous times to walk away from the parking lot area, but failed to comply with such orders. *Id.* at Ex. C (Dear Dep.) at 40:1-4, 44:1-18, 79:1-10. Coco's contact with Dear's horse was the accidental effect of otherwise lawful government conduct—crowd control—not an intentional detention. Because Coco has failed to present sufficient evidence that Dear seized Coco, Dear is entitled to summary judgment on the excessive force claim. *See Williams*, 967 F.3d at 259.

### iii. Malicious Prosecution

Coco alleges that Zane maliciously prosecuted him. D.I. 49 ¶¶ 83-89. To establish a malicious prosecution claim under Delaware law, Coco must show:

> (1) a prior initiation of some regular judicial proceedings against the now-plaintiff; (2) such former proceedings must have been initiated by the now-defendant; (3) the former proceedings must have terminated in favor of the now-plaintiff; (4) the now-defendant must have harbored malice in instituting the former proceedings; (5) there was an absence of probable cause in the former proceedings; and (6) the now-plaintiff suffered injury or damage resulting from the former proceedings.

*Smith v. First State Animal Ctr. & SPCA, Inc.*, No. S15C-12-025, 2018 WL 4829991, at *7 (Del. Super. Ct. Oct. 4, 2018), *aff'd sub nom. Smith v. First State Animal Ctr. & SPCA*, 212 A.3d 803

(Del. 2019) (citations omitted). This tort has been "'historically disfavored' in Delaware." *Id.* (citation omitted).

This Court previously found that Zane had probable cause to detain Coco. *See supra* Section III.A.i. Coco, therefore, cannot establish the fifth element—lack of probable cause—of his malicious prosecution claim. Accordingly, the Court grants Defendants' summary judgment as to Coco's malicious prosecution claim.

### iv. Battery

Defendants seek summary judgment on Coco's battery claims pursuant to the Delaware State Tort Claims Act, 10 Del. C. § 4001. D.I. 83 at 21. The Delaware's State Tort Claims Act "exempts state employees from civil liability for their actions unless the plaintiff proves the absence of one or more of the following three elements:

> (1) The act or omission complained of arose out of and in connection with the performance of an official duty ...;
> (2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and
> (3) The act or omission complained of was done without gross or wanton negligence[.]

*Roberts v. White*, 698 F. Supp. 2d 457, 462 (D. Del. 2010) (citing 10 Del. C. § 4001). Defendants argue that Coco cannot establish the absence of any one of the three elements under Delaware's State Tort Claims Act. D.I. 83 at 21. Coco responds that there is "ample evidence" to allow an inference of bad faith on the part of the Defendants. D.I. 90 at 20. Coco, however, fails to provide examples of such evidence and nothing in the record before the Court suggests Defendants acted in bad faith. *See* D.I. 90 at 16-18, 20-21. Accordingly, summary judgment, as to Coco's battery claims, is granted, "because plaintiff failed to make a sufficient showing that [Defendants are] not entitled to immunity under the State Tort Claims Act." *Roberts*, 698 F. Supp. 2d at 462 (citing *Celotex*, 477 U.S. at 322).

v. **First Amendment**

Coco alleges that Defendants violated his First Amendment rights by "prohibiting the recording of police activity from a safe and non-obstructive distance and retaliating against a person for exercising his First Amendment rights." D.I. 49 ¶ 99; *see also id.* ¶¶ 96-104. Defendants argue summary judgment should be granted for Defendants because Coco does not have standing to bring a First Amendment claim. D.I. 83 at 19.

"To achieve standing, a plaintiff must not only satisfy the case and controversy requirements of Article III as of the time the complaint is filed, but also must satisfy certain prudential requirements." *Nichols v. Markell*, C.A. No. 12-777-CJB, 2014 WL 1509780, at *6 (D. Del. Apr. 17, 2014) (citing *UPS Worldwide Forwarding, Inc. v. US. Postal Serv.*, 66 F.3d 621, 625 (3d Cir. 1995); *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994)). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (citations omitted). Prudential standing "entails an inquiry into a plaintiff's role, because [t]he aim of this form of judicial self-governance is to determine whether the plaintiff is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cnty.*, 271 F.3d 140, 145 (3d Cir. 2001) (internal quotation marks and citations omitted). The Third Circuit wrote that prudential standing:

> "[R]equires that (1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based."

13

*Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010) (quoting *Oxfrod Assocs.*, 271 F.3d at 146). Defendants argue that Coco does not have standing to bring his First Amendment claims because he was not recording, Epps was. D.I. 83 at 19. Defendants conclude that, "[b]ecause Coco cannot bring Epps's claim for him, Coco has no standing." *Id.* Coco responds that Defendants are "reframe[ing]" this issue "as an effort to uphold Epps's right to record the initial police encounter." D.I. 90 at 18. The Court finds Coco's Complaint defeats his own argument. D.I. 49 ¶¶ 96-104. First, the Complaint admits that Coco was not recording. *Id.* ¶ 98. Second, the Complaint alleges that Defendants had interfered with Epps's efforts to record the police activity. *Id.* ¶ 99 ("Defendants Zane and Dear knew or should have known that both prohibiting the recording of police activity from a safe and non-obstructive distance and retaliating against a person for exercising his First Amendment rights, were clearly established as violations of the First Amendment at the time of the incident.").

The Court agrees with Defendants and finds Coco does not have standing. The prudential requirements of standing require Coco to "assert his own legal interests rather than those of third parties." *Wheeler*, 22 F.3d at 538. Here, Coco cannot bring claims on Epps's behalf. Accordingly, Defendants are entitled to summary judgment on Coco's First Amendment claim.

### vi. Qualified Immunity

Because the Court grants summary judgment in favor of Defendants on Coco's constitutional claims, it is unnecessary to address Defendants' qualified immunity arguments. D.I. 83 at 20.

## IV. CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment (D.I. 82) is granted. Given no claims remain pending in the case, the Court also dismisses Defendants' Motion to

Preclude Plaintiff's Expert Witnesses (D.I. 86) as moot. The Court will issue an Order consistent with this Memorandum Opinion.