**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

GAVIN COCO,

                Plaintiff,

    v.

HELEN ZANE, individually,

                Defendant.

Civil Action No. 18-1902-GBW

---

Stephen P. Norman, THE NORMAN LAW FIRM, LLC, Dagsboro, DE.

    *Attorney for Plaintiff*

Colleen E. Durkin, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

    *Attorney for Defendant*

**MEMORANDUM OPINION**

March 25, 2026
Wilmington, Delaware



GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is the Motion of Defendant Helen Zane ("Defendant") for Summary Judgment ("Defendant's Motion"). (D.I. 109). Plaintiff Gavin Coco ("Plaintiff") opposes. (D.I. 114). For the reasons set forth below, Defendant's Motion is DENIED.

## I.    BACKGROUND

### A.    Factual Background

On May 26, 2018, Defendant, along with now-Sergeant Josh Dear ("Sgt. Dear"), were working in a mounted unit of the Delaware State Police, "assisting the Dewey Beach Police for Memorial Day Weekend." (D.I. 112 ¶ 1; D.I. 113 ¶ 1 (not disputing)). Defendant "rode a horse named Poseidon" and Sgt. Dear "rode a horse named J.R." (D.I. 112 ¶ 2; D.I. 113 ¶ 2 (not disputing)). During patrol, a commotion arose outside of a Wings-to-Go restaurant as a woman was being arrested by law enforcement. (D.I. 112 ¶ 3; D.I. 113 ¶ 3 (not disputing)). A crowd gathered to witness the arrest. (D.I. 112 ¶ 3; D.I. 113 ¶ 3 (not disputing)). The ensuing scene was chaotic, with about forty to fifty people gathered and fights breaking out among the observers. (D.I. 112 ¶ 9; D.I. 113 ¶ 9 (not denying the chaotic nature of the incident, nor the number of people gathered and the fighting among the observers)). Defendant and Sgt. Dear "responded to the area to help" disburse crowds that had gathered around the woman being arrested and gave "verbal and visual commands on which direction of travel the crowd should take." (D.I. 112 ¶ 4; D.I. 113 ¶ 4 (not disputing)).

At that point, "an officer on foot told" Plaintiff that he was not allowed to be in the area. (D.I. 113 ¶ 5). Defendant subsequently shouted that "they" (referring to Plaintiff and others in his group) were filming and needed to leave immediately. (Id.). Sgt. Dear then positioned his horse,

1

J.R., in close proximity to Plaintiff, and J.R. subsequently stepped on Plaintiff's toe. (*Id.* ¶¶ 5-6). Defendant then rode her horse, Poseidon, in close proximity to Plaintiff. (*Id.* ¶ 5). As Defendant and Plaintiff converged, Defendant's horse, Poseidon, threw its head back. (D.I. 112 ¶ 7; D.I. 113 ¶ 7 (not disputing Poseidon's head reared back)). It is disputed whether Plaintiff struck Poseidon. (*Contrast* D.I. 112 ¶ 7 (Defendant "then observed [Plaintiff] make a fist with his right hand and [strike] Poseidon in the neck."), *with* D.I. 113 ¶ 7 (Plaintiff "has consistently denied punching/striking [Poseidon]")); *see also Coco v. Dear*, No. 23-1787, 2024 WL 1554060, at *2 (3d Cir. Apr. 10, 2024) (finding a factual dispute regarding whether Plaintiff struck Poseidon)). After Poseidon reared its head, Defendant told Plaintiff that "he was under arrest for striking Poseidon" and grabbed Plaintiff "by the shirt to detain him until a ground officer could arrest him." (D.I. 112 ¶ 7; D.I. 113 ¶ 7 (not contesting that Defendant detained Plaintiff)). Plaintiff's remaining claim against Defendant is for unlawful detention, stemming from Defendant grabbing Plaintiff's shirt after the alleged incident.

## B.    Procedural History

On November 30, 2018, Plaintiff initiated the present action by filing the Complaint, which asserted a myriad of claims against Defendant, Sgt. Dear, and Chief Jason Lovins ("Chief Lovins") for their actions on May 26, 2018. (D.I. 1 ¶¶ 70-111). On March 3, 2020, Plaintiff and Chief Lovins stipulated to dismiss all of Plaintiff's claims against Chief Lovins. (D.I. 47; D.I. 48). On April 5, 2023, the Court granted summary judgment in favor of Defendant and Sgt. Dear on Plaintiff's remaining claims. (D.I. 100). On April 10, 2024, the Third Circuit affirmed-in-part the Court's grant of summary judgment, but reversed as to Plaintiff's unlawful detention claim against Defendant ("Count I"), ruling that factual issues precluded a finding of probable cause at the summary judgment stage. *Coco*, 2024 WL 1554060, at *5. The Third Circuit remanded the case as to Count I with instructions to consider Defendant's qualified immunity defense. *Id.*

2

## II.     LEGAL STANDARD

### A.      Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* "The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case." *Peloton Interactive, Inc. v. iFIT Inc.*, C.A. No. 20-1535-RGA, 2022 WL 1523112, at *1 (D. Del. May 13, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "In qualified-immunity cases, that usually means adopting the plaintiff's version of the facts unless no reasonable jury

3

could believe it." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 192 (3d Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007)) (cleaned up). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B.   Qualified Immunity

Under the doctrine of qualified immunity, "officers performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Curley v. Klem* ("*Curley I*"), 298 F.3d 271, 277 (3d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

A qualified immunity analysis involves a two-part inquiry. "First, '[t]aken in the light most favorable to the party asserting the injury,'" the Court must determine if "the facts alleged show the officer's conduct violated a constitutional right[.]" *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017) (first alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If so, the Court must consider "whether, in light of the specific context of the case, 'the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). The constitutional question "focuses on whether there was a reasonable mistake of fact, whereas the qualified immunity question addresses reasonable mistakes of law." *Southerland v. Pennsylvania*, 389 F. App'x 166, 170 (3d Cir. 2010) (citing *Curley v. Klem* ("*Curley II*"), 499 F.3d 199, 214 (3d Cir.

2007)). Courts should address these questions in whatever order "will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

"The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 242 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* at 241 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). At summary judgment, the burden of persuasion is on the party asserting qualified immunity. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).

### C.  Delaware Code title 11, § 1250(a)(1)

Plaintiff was arrested for allegedly violating Del. Code title 11, § 1250(a)(1), which provides:

> A person is guilty of harassment of a law-enforcement animal when such person intentionally harasses, taunts, menaces, challenges or alarms a law-enforcement animal in such a manner as is likely to provoke from such animal a violent, defensive or threatening response, such as lunging, baring of teeth, kicking, spinning or jumping, if such response from the animal causes alarm, distress, fear or risk of injury to any person or to the animal.

## III.  DISCUSSION

Defendant argues that she is entitled to summary judgment on her affirmative defense of qualified immunity. For the reasons set forth below, the Court disagrees.

### A.    Defendant is Not Entitled to Qualified Immunity for Her Actions Leading to the Arrest of Plaintiff

Defendant asserts that she is entitled to qualified immunity for her conduct on May 26, 2018. (D.I. 110 at 8-12). In Defendant's view, she "is entitled to qualified immunity on the unlawful detention claim because the evidence in the record establishes that [Defendant] was performing a discretionary duty and that her actions were objectively reasonable." (*Id.* at 10). In asserting that her actions were reasonable, and thus that qualified immunity should attach, Defendant emphasizes that she "was in a high stress, crowd control situation," that Plaintiff ignored several orders given by Defendant and her colleagues, that Defendant saw Plaintiff strike her horse (Poseidon), and that Poseidon's head subsequently reared back in a manner consistent with being struck. (*Id.* at 11).

Plaintiff disagrees. In Plaintiff's view, Defendant attempts to claim qualified immunity by "adopting her version of events," which is impermissible at the summary judgment stage. (D.I. 114 at 7). According to Plaintiff, the Court is bound to accept as true his version of events, including that he did not punch Defendant's horse (Poseidon). (*Id.* at 8). Moreover, Plaintiff asserts that his version of events includes Defendant making "false, increasingly exaggerated claims against [Plaintiff] . . . simply as a means to remove [Plaintiff's] party from the scene and prevent them from recording the violent arrest of [a] citizen which had attracted [Plaintiff's] party's attention." (*Id.*).

The Court agrees with Plaintiff. The Third Circuit identified at least two genuine disputes of material fact as to whether Defendant had probable cause to seize Plaintiff: (1) whether Plaintiff punched Defendant's horse (Poseidon), and (2) whether Plaintiff approached Defendant's horse (or vice-versa). *Coco*, 2024 WL 1554060, at *2. Construing the evidence in the light most favorable to Plaintiff, as the Court is required to do at the summary judgment stage, the Court

6

cannot conclude, at this procedural posture, that Defendant is entitled to qualified immunity for her actions on May 26, 2018.

"Under settled law," Defendant is "entitled to immunity if a reasonable officer could have believed that probable cause existed to" detain Plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "[T]he operative inquiry is not whether the defendant's actions actually abridged some constitutional right, but, rather, whether those actions were obviously inconsistent with that right." *Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004) (internal citations omitted). "Thus, in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." *Id.* (citing *Ricci v. Urso*, 974 F.2d 5, 7 (1st Cir. 1992)). This is because qualified immunity works to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendant asserts that a reasonable officer in her position would have thought probable cause was present to detain Plaintiff because she "observed [Plaintiff] ball his right hand into a fist and strike Poseidon in the side of his neck so hard that Poseidon's neck jerked back." (D.I. 110 at 11; *see also id.* ("[Defendant's] detention of [Plaintiff] was objectively reasonable under the circumstances, specifically that she had just observed [Plaintiff] punch Poseidon"); *id.* at 12 ("[Defendant] then observed [Plaintiff] use his fist to punch Poseidon.")).

Given that Defendant is moving for summary judgment, the Court is required to adopt Plaintiff's version of the facts, unless said facts are "blatantly contradicted" by available video evidence or the record as a whole. *Cumberland Cnty.*, 8 F.4th at 192 (quoting *Scott v. Harris*, 550 U.S. at 378, 380); *see also Scott v. Harris*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion

7

for summary judgment."). According to Plaintiff, the incident began to unfold with Defendant, who was on Poseidon, telling her colleagues that Plaintiff and his party needed to be removed from the scene because one of them was filming the commotion caused by the arrest of a woman outside of a Wings-to-Go restaurant. (D.I. 113 ¶ 5). Sgt. Dear, also on a horse, subsequently approached Plaintiff (*id.* ¶ 7, 9), and Plaintiff was struck twice by Sgt. Dear's horse (*id.* ¶ 5). Then, without Plaintiff showing any signs of aggression toward Poseidon, and when he was too far away to have struck Poseidon, Defendant accused Plaintiff of having struck Poseidon. (D.I. 113 ¶¶ 7, 9). Defendant then detained Plaintiff so that he could be arrested by a ground officer for striking Poseidon, in violation of Delaware Code title 11, § 1250(a)(1). (D.I. 112 ¶ 7; D.I. 113 ¶ 7 (not contesting that Defendant detained Plaintiff)).

In this case, there is video footage of the events in question. (*See* D.I. 113, Ex. 4). However, Plaintiff's version of events cannot be said to blatantly contradict said video footage, nor the record as a whole. Thus, the Court concludes that there are genuine issues of material fact that a jury could find which would lead to the conclusion that Defendant's detention of Plaintiff was unreasonable under the present circumstances. Defendant's assertions to the contrary are unpersuasive for at least two key reasons.

*First*, the Third Circuit has specifically identified whether Plaintiff struck Poseidon as a genuine issue of material fact present in this action. *Coco*, 2024 WL 1554060, at *2 ("Coco testified that he did not touch the horse."). Although the video footage does appear to show Poseidon's head rearing back, it does not "blatantly contradict" Plaintiff's versions of the facts. (*See* D.I. 113, Ex. 4, Clip 4). In fact, Sgt. Dear testified that the video footage showed that Plaintiff was *too far* from Poseidon to have struck Poseidon at the time Plaintiff was accused of having done so. (D.I. 113, Ex. 5 at 60:18-65:09); *see also Coco*, 2024 WL 1554060, at *2 ("Further, [Sgt.]

8

Dear conceded that Coco was too far away from Officer Zane to have punched her horse at the moment she accused him of doing so."). If Plaintiff was clearly too far away from Poseidon to have struck Poseidon at the time he was accused of having done so, a jury could find facts that would render any mistake Defendant made regarding whether Plaintiff punched Poseidon to be unreasonable.

*Second*, Probation Officer Skyler Bowden ("Officer Bowden") testified that he did not recall Plaintiff getting aggressive with Poseidon. (D.I. 113, Ex. 7 at 24:12-15). Indeed, Plaintiff disputes whether he acted aggressively *at all* toward Poseidon. (D.I. 113 ¶¶ 5-11). Under Plaintiff's version of events, it was actually Defendant that approached Plaintiff, not the other way around. (*See* D.I. 113 ¶¶ 7, 9); *see also Coco*, 2024 WL 1554060, at *2 ("[W]hether Coco was approaching Officer Zane and her horse is also in dispute."). Just as before, the video footage does not blatantly contradict Plaintiff's version of events. (*See* D.I. 113, Ex. 4). To the contrary, many officers, when viewing the available video footage, seemed to acknowledge that said footage *supported* Plaintiff's version of events. (*See* D.I. 113, Ex. 7 at 24:12-15 (Officer Bowden did not observe Plaintiff getting aggressive with Poseidon); D.I. 113, Ex. 3 at 163:6-23 (Master Corporal Helen Zane conceding, in her deposition, that the video did not show Plaintiff approaching Sgt. Dear and his mount)).

Given the foregoing, the Court finds that Plaintiff's version of events is not blatantly contradicted by the available video footage and, at the summary judgment stage, the Court must accept as true Plaintiff's version of events as the non-movant. *Cumberland Cnty.*, 8 F.4th at 192; *see also Lowry v. City of Scranton, Pennsylvania*, 48 F. App'x 852, 854 (3d Cir. 2002) ("Summary judgment on the issue of qualified immunity is inappropriate where the case depends upon the factfinder's evaluation of the officer's conduct. This is especially true where, as here, there is a

9

genuine dispute about facts material to an assessment of the officers' conduct." (cleaned up)). Importantly, Plaintiff has identified support in the record that would allow a jury to adopt his version of events. Plaintiff's version of events includes that (1) Defendant and Sgt. Dear approached Plaintiff, (2) Plaintiff did not act aggressively toward Poseidon, (3) Plaintiff never struck Poseidon, and (4) when Plaintiff was too far away from Poseidon to have struck him, Defendant accused Plaintiff of having done so and grabbed Plaintiff by the collar. All four of the foregoing facts are disputed, have support in the record, and all four bear directly on whether a reasonable officer would have thought that probable cause was present to detain Plaintiff for violating Delaware Code title 11, § 1250(a)(1). Despite the chaotic nature of the night in question (D.I. 112 ¶ 9; D.I. 113 ¶ 9), a jury could find facts that lead to the conclusion that Plaintiff was unlawfully detained and a reasonable officer in Defendant's position at the time of the alleged incident would not have believed there was probable cause to detain Plaintiff under the circumstances. Thus, Defendant's Motion is DENIED.

## IV.    CONCLUSION

For the above reasons, Defendant's Second Motion for Summary Judgment (D.I. 109) is DENIED. Given the Court's denial of summary judgment, Plaintiff's Motion for Status Conference (D.I. 120) is DENIED as MOOT.

Moreover, given Plaintiff's remaining claim in this action – Count I of the Amended Complaint (Violation of 42 U.S.C. § 1983 Based on Unlawful Detention as to Zane) – is trial ready, it will be scheduled for a three (3) day jury trial to begin on May 27, 2026. The Court will issue an Order consistent with this Memorandum Opinion.