IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GAVIN COCO,

                    Plaintiff,

      v.                                        Civil Action No. 18-1902-GBW

HELEN ZANE, individually,

                    Defendant.

---

Stephen P. Norman, THE NORMAN LAW FIRM, LLC, Dagsboro, DE.

      *Attorney for Plaintiff*

Jennifer Kate Aaronson, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

      *Attorney for Defendant*

## MEMORANDUM OPINION

June 15, 2026
Wilmington, Delaware



GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is the Third Motion of Defendant Helen Zane ("Defendant") for Summary Judgment ("Defendant's Third Summary Judgment Motion"). (D.I. 134). Plaintiff Gavin Coco ("Plaintiff") opposes. (D.I. 142). For the reasons set forth below, Defendant's Third Summary Judgment Motion is GRANTED.

## I.    BACKGROUND

### A.    Factual Background

On May 26, 2018, Defendant, along with now-Sergeant Josh Dear ("Sgt. Dear"), were working in a mounted unit of the Delaware State Police, "assisting the Dewey Beach Police for Memorial Day Weekend." (D.I. 112 ¶ 1; D.I. 113 ¶ 1 (not disputing)). Defendant "rode a horse named Poseidon" and Sgt. Dear "rode a horse named J.R." (D.I. 112 ¶ 2; D.I. 113 ¶ 2 (not disputing)). During patrol, a commotion arose outside of a Wings-to-Go restaurant as a woman was being arrested by law enforcement. (D.I. 112 ¶ 3; D.I. 113 ¶ 3 (not disputing)). A crowd gathered to witness the arrest. (D.I. 112 ¶ 3; D.I. 113 ¶ 3 (not disputing)). The ensuing scene was chaotic, with about forty to fifty people gathered, and fights breaking out among the observers. (D.I. 112 ¶ 9; D.I. 113 ¶ 9 (not denying the chaotic nature of the incident, nor the number of people gathered and the fighting among the observers)). Defendant and Sgt. Dear "responded to the area to help" disburse crowds that had gathered around the woman being arrested and gave "verbal and visual commands on which direction of travel the crowd should take." (D.I. 112 ¶ 4; D.I. 113 ¶ 4 (not disputing)).

At that point, "an officer on foot told" Plaintiff that he was not allowed to be in the area. (D.I. 113 ¶ 5). Defendant subsequently shouted that "they" (referring to Plaintiff and others in his

1

group) were filming and needed to leave immediately. (*Id.*). Sgt. Dear then positioned his horse, J.R., in close proximity to Plaintiff, and J.R. subsequently stepped on Plaintiff's toe. (*Id.* ¶¶ 5-6). Defendant then rode her horse, Poseidon, in close proximity to Plaintiff. (*Id.* ¶ 5). As Defendant and Plaintiff converged, Defendant's horse, Poseidon, threw its head back. (D.I. 112 ¶ 7; D.I. 113 ¶ 7 (not disputing Poseidon's head reared back)). It is disputed whether Plaintiff struck Poseidon. (*Contrast* D.I. 112 ¶ 7 (Defendant "then observed [Plaintiff] make a fist with his right hand and [strike] Poseidon in the neck."), *with* D.I. 113 ¶ 7 (Plaintiff "has consistently denied punching/striking [Poseidon]")); *see also Coco v. Dear*, No. 23-1787, 2024 WL 1554060, at *2 (3d Cir. Apr. 10, 2024) (finding a factual dispute regarding whether Plaintiff struck Poseidon)). After Poseidon reared its head, Defendant told Plaintiff that "he was under arrest for striking Poseidon" and grabbed Plaintiff "by the shirt to detain him until a ground officer could arrest him." (D.I. 112 ¶ 7; D.I. 113 ¶ 7 (not contesting that Defendant detained Plaintiff)). Although Plaintiff disputes striking Poseidon, he "does not contest that, prior to being seized, he did not obey officers' instructions to leave the scene." *Coco*, 2024 WL 1554060, at *4.

Plaintiff's remaining claim against Defendant is for unlawful detention, stemming from Defendant grabbing Plaintiff's shirt after Plaintiff allegedly struck Poseidon.

### B.    Procedural History

On November 30, 2018, Plaintiff initiated the present action by filing the Complaint, which asserted a myriad of claims against Defendant, Sgt. Dear, and Chief Jason Lovins ("Chief Lovins") for their actions on May 26, 2018. (D.I. 1 ¶¶ 70-111). On March 3, 2020, Plaintiff and Chief Lovins stipulated to dismiss all of Plaintiff's claims against Chief Lovins. (D.I. 47; D.I. 48). On April 5, 2023, the Court granted summary judgment in favor of Defendant and Sgt. Dear on Plaintiff's remaining claims. (D.I. 100). On April 10, 2024, the Third Circuit affirmed-in-part the Court's grant of summary judgment, but reversed as to Plaintiff's unlawful detention claim against

Defendant ("Count I"), ruling that factual issues precluded a finding of probable cause at the summary judgment stage. *Coco*, 2024 WL 1554060, at *5. The Third Circuit remanded the case as to Count I with instructions to consider Defendant's qualified immunity defense. *Id.* Defendant filed her Second Summary Judgment Motion on May 9, 2025, asserting any mistake she may have made regarding the existence of probable cause to seize Plaintiff on suspicion of punching her horse was objectively reasonable. (D.I. 112; D.I. 113). On March 25, 2026, the Court denied Defendant's Second Summary Judgment Motion. (D.I. 121; D.I. 122).

On May 26, 2026, Defendant requested leave to file a Third Motion for Summary Judgment on the basis of an intervening change in controlling law as to the "any crime rule." (D.I. 131 at 5). On May 27, 2026, the Court granted Defendant's request (D.I. 132), and Defendant filed her Third Motion for Summary Judgment on June 1, 2026 (D.I. 134). Briefing was completed on June 11, 2026. (D.I. 135; D.I. 142; D.I. 152). For the reasons set forth below, Defendant's Third Summary Judgment Motion is GRANTED.

## II.    LEGAL STANDARD

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* "The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case." *Peloton Interactive, Inc. v. iFIT Inc.*, C.A. No.

3

20-1535-RGA, 2022 WL 1523112, at *1 (D. Del. May 13, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "In qualified-immunity cases, that usually means adopting the plaintiff's version of the facts unless no reasonable jury could believe it." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 192 (3d Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007)) (cleaned up). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## B.   Qualified Immunity

Under the doctrine of qualified immunity, "officers performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Curley v. Klem* ("*Curley I*"), 298 F.3d 271, 277 (3d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457

4

U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

A qualified immunity analysis involves a two-part inquiry. "First, '[t]aken in the light most favorable to the party asserting the injury,'" the Court must determine if "the facts alleged show the officer's conduct violated a constitutional right[.]" *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017) (first alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If so, the Court must consider "whether, in light of the specific context of the case, 'the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). The constitutional question "focuses on whether there was a reasonable mistake of fact, whereas the qualified immunity question addresses reasonable mistakes of law." *Southerland v. Pennsylvania*, 389 F. App'x 166, 170 (3d Cir. 2010) (citing *Curley v. Klem* ("*Curley II*"), 499 F.3d 199, 214 (3d Cir. 2007)). Courts should address these questions in whatever order "will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

"The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 242 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* at 241 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

### C.    The "Any-Crime" Rule

To succeed on a claim of unlawful detention, the plaintiff is "required to establish that there was no probable cause for any crime at all," which the Third Circuit has called the "any-crime rule." *Wexler v. Hawkins*, 173 F.4th 478, 483 (3d Cir. 2026). "[P]robable cause to arrest exists if there is a 'fair probability' that the person committed the crime at issue." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (internal quotations and citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). However, the existence of probable cause is not "further confined to the known facts bearing upon the offense actually invoked at the time of arrest," nor is there a requirement that the "offense supported by these known facts [] be 'closely related' to the offense that the officer invoked." *Id.* at 153. "Applying the 'any-crime rule' to qualified immunity, an officer is entitled to qualified immunity if [s]he had arguable probable cause to arrest a suspect for any crime, even if that crime was not the offense announced by the officer at the time of the arrest." *Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023) (cleaned up).

## III.    DISCUSSION

Defendant again argues that she is entitled to summary judgment on her affirmative defense of qualified immunity, this time on the basis of the any-crime rule. For the reasons set forth below, the Court agrees.

### A.    Defendant's Third Motion for Summary Judgment is Proper

As discussed above, to succeed on a claim of unlawful detention, the plaintiff is "required to establish that there was no probable cause for any crime at all," which the Third Circuit has called the "any-crime rule." *Wexler v. Hawkins*, 173 F.4th 478, 483 (3d Cir. 2026). Plaintiff does not contest that the any-crime rule would insulate Defendant from liability (and suit when paired

with qualified immunity) if she had perceived facts from which a reasonable officer would believe probable cause to be present to seize Plaintiff on suspicion of committing *any* offense, not just the one announced at the time of arrest. (*See* D.I. 142 at 3-4). Instead, Plaintiff first asserts that Defendant "should not get successive opportunities, near trial, to raise theories always available." (*Id.* at 4).

The Court finds that Defendant has properly brought her Third Motion for Summary Judgment. "[D]istrict courts have the authority to permit or restrict successive motions for summary judgment . . . ." *Flynn v. Dep't of Corr.*, 739 F. App'x 132, 139 (3d Cir. 2018). This case, which is scheduled for trial, turns (in part) on qualified immunity. "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, the Court will exercise its discretion and consider Defendant's Third Motion for Summary Judgment on the basis of qualified immunity.

### A.   Defendant is Entitled to Qualified Immunity on Plaintiff's Claim for Unlawful Detention Pursuant to the Any-Crime Rule

Defendant asserts that she is entitled to qualified immunity on Plaintiff's unlawful detention claim pursuant to the any-crime rule. Specifically, Defendant asserts that she is entitled to qualified immunity because a reasonable officer would have believed he or she had probable cause to seize Plaintiff on suspicion of committing (1) disorderly conduct, (2) loitering, and (3) public intoxication. (D.I. 135 at 6).

#### 1.   Disorderly Conduct and Loitering

Defendant first asserts that she is entitled to qualified immunity on Plaintiff's unlawful detention claim, pursuant to the any-crime rule, because a reasonable officer in Defendant's

position would have believed that probable cause existed to arrest Plaintiff for disorderly conduct and loitering.  In doing so, Defendant points to five key facts that she asserts "she believed based upon her personal observations: that Coco (1) attempted to enter the parking lot, which was a crime scene; (2) ignored Sgt. Dear's lawful commands to leave or go; (3) ignored [Defendant's] lawful command to go; (4) stumbled onto the sidewalk (which [Defendant] believed was because [Coco] was intoxicated); and (5) disobeyed Sgt. Dear's directional command." (*Id*).

Plaintiff disagrees, asserting that Defendant admitted she did not hear Sgt. Dear's directional commands.  (D.I. 142 at 5).  Furthermore, Defendant identifies that the commands given were to the crowd generally, and not directed at Plaintiff.  (*Id.*).

"A person is guilty of disorderly conduct when . . . [c]ongregating with other persons in a public place and refusing to comply with a lawful order of the police to disperse . . . ." Del. Code tit. 11, § 1301.  Similarly, "[a] person is guilty of loitering when: . . . [t]he person fails or refuses to move on when lawfully ordered to do so by any police officer." Del. Code tit. 11, § 1321(1). With respect to the disorderly conduct and loitering offenses, Plaintiff does not challenge that a lawful order was given, nor does Plaintiff contest that he refused to disperse when a lawful order to do so was given.  (*See* D.I. 142 at 5).  Rather, Plaintiff challenges Defendant's assertion of qualified immunity based on having probable cause to seize Plaintiff on suspicion of disorderly conduct and loitering because "Defendant admits that she did not perceive such an order" given to Plaintiff, and that such orders were non-directional and given to the crowd generally, rather than instructing Plaintiff to go in a specific direction.  (*Id.*).

Significantly, the Third Circuit has already found that, "prior to being seized, [Plaintiff] did not obey officers' instructions to leave the scene . . . ." *Coco v. Dear* (*Coco I*), No. 23-1787, 2024 WL 1554060, at *4 (3d Cir. Apr. 10, 2024).  "This [C]ourt is, of course, bound by the

8

perimeters of the remand and the previous determinations made in this case except as altered on appeal." *Dyson v. Kocik*, 564 F. Supp. 109, 113 (M.D. Pa. 1983) (citation omitted), *aff'd*, 740 F.2d 956 (3d Cir. 1984), *and aff'd sub nom. Appeal of Hewitt*, 740 F.2d 956 (3d Cir. 1984). Seemingly recognizing this restraint, Plaintiff does not actually challenge that he disobeyed officers' commands to leave the area, but instead asserts that Defendant did not know of such orders given by other officers, Defendant did not know whether Plaintiff heard Defendant's commands to leave said area, and that Defendant's commands were given generally rather than directed at Plaintiff. (D.I. 142 at 5). However, none of Plaintiff's assertions are persuasive and, under the present set of facts, the Court concludes that it would be reasonable under the circumstances for an objective officer in Defendant's position to believe that probable cause was present to arrest Plaintiff for the offenses of loitering and disorderly conduct.

*First*, although Plaintiff does not contest that, prior to being seized, he did not obey the officers' instructions to leave the scene, Plaintiff attempts to nullify his disobedience by contending that Defendant did not perceive commands given by other officers instructing Plaintiff to leave the area. (D.I. 142 at 5). Specifically, Plaintiff highlights portions of Defendant's deposition transcript, where when asked what "[Sgt.] Dear [told Plaintiff]," Defendant responded by stating "I don't know." (D.I. 135, Ex. C at 121:16-18). However, Defendant also testified that she and Sgt. Dear were present to "[c]onduct crowd control and help secure the scene." (*Id.* at 109:03-04). Defendant further testified that "*[w]e* [(referring to Defendant and Sgt. Dear]) were just telling people, 'you've got to move. You got to keep moving. You got to get "go around. Go around.""" (*Id.* at 120:14-17) (emphasis added). Thus, although Defendant did not know for certain whether Sgt. Dear had given Plaintiff a lawful order to disperse, it would not be unreasonable for an objective officer in Defendant's position at the time to believe he had done so.

9

*Second*, even if Plaintiff's disregard of Sgt. Dear's orders were not enough for a reasonable officer in Defendant's position at the time to believe probable cause was present to arrest Plaintiff for loitering and disorderly conduct, Plaintiff's non-compliance with the Orders given by Defendant herself was sufficient. Plaintiff asserts, without citation, that, because Defendant was not aware whether Plaintiff heard Defendant's lawful order to disperse, a reasonable officer in Defendant's position at the time would not believe there was probable cause to arrest Plaintiff for disorderly conduct and loitering. The Court disagrees.

The Court finds instructive the Ninth Circuit's decision in *Lyons v. City of Seattle*, 214 F. App'x 655 (9th Cir. 2006). In *Lyons*, the plaintiffs did not challenge whether dispersal orders were given, but only challenged the district court's finding of probable to arrest because the plaintiffs "did not hear the orders until it was too late to comply." 214 F. App'x at 657. The Ninth Circuit disagreed, finding that "it is irrelevant whether each plaintiff actually heard an order," but only whether "the police issued the orders and reasonably believed there was a 'fair probability' that the plaintiffs heard at least one of the orders, and voluntarily disobeyed." *Id.*

In the present action, Defendant testified that she gave Plaintiff (and others) commands "[t]o get back," (D.I. 135, Ex. C at 121:08), and to "[g]o around" (*Id.* at 121:20, 122:05), while Plaintiff was 35-40 feet away. Defendant testified that Plaintiff disregarded those commands and continued to try and enter the parking lot, at which point she continued to give "him verbal commands to go around" and "[d]irected him with [her] hands." (*Id.* at 132:16-17). Defendant acknowledged that she did not know if Plaintiff understood her commands. (*Id.* at 131:14-16). However, Defendant gave numerous warnings, both verbal and visual, to leave the area, and Plaintiff persisted in entering the area. (*Id.* at 121:08, 121:20, 122:05, 132:16-17 & 132:10). Significantly, Plaintiff does not challenge the existence of the commands, nor his noncompliance.

10

(*See* D.I. 142); *see also Coco v. Dear*, No. 23-1787, 2024 WL 1554060, at \*4 (3d Cir. Apr. 10, 2024) ("Coco does not contest that, prior to being seized, he did not obey officers' instructions to leave the scene . . . .").

Plaintiff's challenges to Defendant's commands center (in part) around her deposition testimony, where Defendant testified she did not know whether Plaintiff had heard her commands. (D.I. 142 at 5). Importantly, the qualified immunity "inquiry is an objective one; the arresting officer's subjective beliefs about the existence of probable cause are not relevant." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000). The undisputed facts before this Court are (1) Defendant gave several visual and verbal commands to leave the area, (2) Plaintiff disregarded those commands and continued to enter the area, and (3) Defendant was unaware whether Plaintiff had heard her commands. Under these facts, a reasonable officer in Defendant's position would have believed that probable cause existed to seize Plaintiff for the offenses of loitering and disorderly conduct. Thus, Plaintiff's second assertion fails.

*Third*, Plaintiff identifies that Defendant's commands were to the crowd generally, and not specifically directed at Plaintiff. (D.I. 142 at 5). Importantly, Plaintiff identifies no precedent holding that a lawful order to disperse must be given to Plaintiff specifically, rather than a to crowd generally. (*See* D.I. 142). To the contrary, the Court finds that "it is untenable that an order to an assembled crowd to disperse from a crime scene would apply only to certain people, or that police need to tell each member of the crowd individually that he or she needs to 'get back' for the order to have any significance." *Polanco v. City of New York*, No. 14 Civ. 7986 (NRB), 2018 WL 1804702, at \*5 n.3 (S.D.N.Y. Mar. 28, 2018). Furthermore, given the lack of cited precedent to the contrary, if a reasonable officer in Defendant's position would be mistaken in her belief that an order to disperse to a crowd generally qualifies as a "lawful order to disperse" under Del. Code

tit. 11, §§ 1301(a)(1)(e) & 1321(1), any such insufficiency cannot be said to be "clearly established." Thus, the fact that Defendant's orders were to the crowd generally, rather than specifically directed at Plaintiff, is immaterial to the Court's analysis.

* * *

In sum, Plaintiff asserts that qualified immunity should not shield Defendant from her detention of Plaintiff allegedly because (1) Defendant did know other officers gave lawful orders for Plaintiff to disperse, (2) Defendant did not know whether Plaintiff heard the orders that Defendant gave, and (3) Defendant's orders were to the crowd generally, rather than being directed specifically at Plaintiff. For the reasons set forth above, Plaintiffs' assertions fail. Because the Court finds that a reasonable officer in Plaintiff's position at the time would have believed that probable cause existed to seize Plaintiff on suspicion of disorderly conduct and loitering, the Court grants summary judgment in Defendant's favor and does not reach the question of whether a reasonable officer would have believed there was probable cause to seize Plaintiff for suspicion of public intoxication. The law provides that Defendant is entitled to qualified immunity if she had probable cause to seize Plaintiff for *any* crime. Under the circumstances of this case, Defendant had probable cause to seize Defendant for loitering and disorderly conduct. Moreover, any mistakes regarding the existence of probable cause for loitering and disorderly conduct violations were reasonable. Thus, Defendant's Third Summary Judgment Motion (D.I. 134) is GRANTED.

## IV.    CONCLUSION

For the above reasons, Defendant's Third Motion for Summary Judgment (D.I. 134) is GRANTED. The Court will issue an Order consistent with this Memorandum Opinion.

12